Michael P. Massad, Jr. – SBT # 13164000
Lloyd A. Lim – SBT # 24056871
Elisabeth A. Wilson – SBT # 24056896
**WINSTEAD PC**
1201 Elm Street, Suite 5400
Dallas, Texas 75270
Phone:  (214) 745-5400
Fax:     (214) 745-5390

**ATTORNEYS FOR THE BECK GROUP
AND H.C. BECK, LTD.**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 09-42778-BRT-11 |
| MCKINNEY SHORES HOTEL | § | |
| PARTNERS, INC. | § | Chapter 11 |
| | § | |
| Debtor | § | |
| | § | |

**MOTION OF H.C. BECK, LTD. FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW ARBITRATION TO PROCEED, WAIVER OF 30-DAY HEARING REQUIREMENT, AND REQUEST FOR HEARING IN PLANO, TEXAS**

---

**IMPORTANT NOTICES**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FIFTEEN (15) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.**

**IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

---

**TO THE HONORABLE BRENDA RHOADES, U.S. BANKRUPTCY JUDGE:**

H.C. Beck, Ltd. ("HCB") files this *Motion of H.C. Beck, Ltd. for Relief from the Automatic Stay to Allow Arbitration to Proceed* (the "Motion"), and would respectfully show the Court the following:

## I. Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 362, and Federal Rule of Bankruptcy Procedure 4001. This matter is a core proceeding under 28 U.S.C. § 157.

## II. Background

### A. The Bankruptcy Case

2. McKinney Shores Hotel Partners, Inc. (the "Debtor"), commenced this case on September 1, 2009 (the "Petition Date"), by filing a Voluntary Chapter 11 Petition. The Debtor is authorized to conduct business operations operation as a debtor-in-possession; however, the Debtor has not conducted any business operations since the Petition Date. No trustee or committee has been appointed. Debtor's voluntary petition designates the Debtor as a Single Asset Real Estate Debtor under Section 101(51)(B) of the Bankruptcy Code.

### B. The Westin Hotel Project and the HCB Claim and Lien

3. The Debtor is a single asset real estate entity whose sole purpose is to own and develop a hotel and convention center known as the Westin McKinney Hotel and Events Center located in McKinney, Collin County, Texas (the "Project"). In order to build the Project, the Debtor, as owner, and HCB, as contractor and construction manager, entered into a prepetition "Standard Form and of Agreement Between Owner and Construction Manager where the Construction Manager is also the Contractor" (the "Construction Contract") on February 25, 2008. Pursuant to the Construction Contract, HBC provided labor and materials for the

---

construction of the Project. HCB also performed certain mass grading work on property adjacent to the Project pursuant to a change order to the Contract.

4. The Debtor did not obtain a construction loan to enable it to complete the Project, but instead received unsecured financing from an affiliated entity, O & S Holdings, LLC. The Debtor and its affiliate began to run out of funds to complete the Project in the fall of 2008, and started to fail to pay HCB and/or the subcontractors working on the Project. On October 9, 2008, the Debtor instructed HCB to cease all work on the Project. In Amendment No. 1 to the Construction Contract (the "Amendment"), dated October 15, 2008, HCB and the Debtor confirmed the suspension of all construction activities on the Project. The Amendment also obligated the Debtor to continue to compensate HCB for expenses during the suspended time of performance.

5. The Debtor, however, failed to compensate HCB as provided for in the Amendment. HCB, therefore, notified the Debtor of its intent to stop work on the Project for, *inter alia*, failure to pay HCB as required under the Construction Contract on January 21, 2009. On January 30, 2009, HCB notified the Debtor of it intent to terminate the Construction Contract for, *inter alia*, the Debtor's continued failure to pay HCB as required by the Construction Contract. On March 2, 2009, HCB gave the Debtor its final notice of its intent to terminate the Construction Contract and formally terminated the Construction Contract on March 13, 2009.

6. As of the Petition Date, the outstanding indebtedness owed by the Debtor to HCB was at least $8,273,674.91 for the services provided by HCB to the Debtor pursuant to the Construction Contract (the "Pre-Petition Indebtedness"). As outlined above, the Pre-Petition Indebtedness is secured by the Lien Affidavit. Additionally, as of the time of the filing of this

Motion, there is a total of approximately $15,879,879.00 in M&M Liens filed against the Property, including the amounts represented by the Lien Affidavit.[1]

7. HCB took the appropriate steps to protect its right to payment under the Construction Contract by filing a Lien Affidavit against the real property on which the Project is located. HCB is, therefore, a secured creditor of the Debtor based upon, without limitation, the instruments which are referenced and described as follows (hereinafter collectively referred to as the "Lien Affidavit"[2]):

- Lien Affidavit and Claim dated December 10, 2008 and recorded as Document Number 20081211001409710, Official Public Records of Collin County, Texas on December 11, 2009.

- Amended Lien Affidavit and Claim dated January 14, 2009 and recorded as Document Number 20090115000045840, Official Public Records of Collin County, Texas on January 15, 2009.

- Second Amended Lien Affidavit and Claim dated April 28, 2009 and recorded as Document 20090501000514410, Official Public Records of Collin County, Texas on May 1, 2009.

8. Pursuant to the Lien Affidavit, HBC holds a properly perfected lien on real property and improvements related to the construction of a hotel and associated amenities referred to as "The Westin McKinney" located at 1900 Gateway Boulevard, McKinney, Collin County, Texas, 75069 (the "Property"). The Property is legally described as follows:

> Tract 1: Hotel Unit of McKinney Gateway Condominium regime in the City of McKinney, Collin County Texas, according to the Condominium Declaration dated February 28, 2008, recorded as Document Number 20080229000237480 of the Condominium Records of Collin County, Texas, which condominium is located on Lot 3, Block A, McKinney Bridge Street Town Center, a subdivision to the City of McKinney, according to the plat thereof recorded in Volume 2008, Slides 65 & 66, Plat Records of Collin County, Texas;

---

[1] Of the $15,879,879.00 in M&M liens filed against the Property, $10,164,412.00 belongs to HCB and its affiliate the Beck Group, $1,277,574.00 belongs to the City of McKinney and $125,120.00 belongs to Alpha Testing. Accordingly, the M&M Liens filed against the Property that are clearly not "duplicative" total a minimum of $11,567,106.00.

[2] The instruments comprising the Lien Affidavit are attached hereto as Exhibit "1" and are incorporated herein by reference.

_____
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW ARBITRATION TO**
**PROCEED**

Tract 2: Non-exclusive easement interest appurtenant to Tract 1 created pursuant to the certain Reciprocal Easement Agreement dated as of March 5, 1999, by and between JDN Real Estate – McKinney, L.P. and American Realty Trust, Inc., recorded as Document Number 99-0028590, in Volume 4369, Page 2124, Land Records of Collin County, Texas;

Tract 3: Non-exclusive interest appurtenant to Tract 1 created pursuant to that certain Declaration and Establishment of Protective Covenants, Conditions and Restrictions and Grant of Easements dated February 4, 2008, recorded as Document Number 20080207000147650, Official Public Records of Collin County, Texas.

### C. The Prepetition Arbitration

9. Prior to the Petition Date, the Debtor asserted that it disputes certain unidentified portions of HCB's claim and lien. HCB sought to address the Debtor's dispute through arbitration as provided for by the Construction Contract.[3] Pursuant to the Construction Contract, the Debtor and HCB agreed to arbitrate any dispute arising out of or relating to the Construction Contract if such dispute is not resolved through other preliminary methods. On January 21, 2009, HCB initiated American Arbitration Association ("AAA") case no. 71 110 J 00069 09 (the "Arbitration") seeking a determination of (1) the amounts due and owing to it under the Construction Contract and (2) the validity of its lien by filing its *Request for Mediation and Demand for Arbitration*.[4] The Debtor filed a counterclaim in the Arbitration.[5] In the Counterclaim, the Debtor alleged HCB breached its contract by "failing to timely suspend the work on the Project and by incurring unreasonable and unnecessary costs on the Project after

---

[3] Section 9.1.1 of the Construction Contract states that "[d]uring both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Article 4 of A201™-1997 except that, during the Preconstruction Phase, no decision by the Architect shall be a condition precedent to mediation or arbitration." Article 4 of the American Institute of Architects' General Conditions document A201™-1997 provides that "any Claim arising out of or related to the Contract" is subject to arbitration.

[4] HCB's Request for Mediation and Demand for Arbitration (the "Arbitration Demand") in AAA case no. 71 110 J 00069 09 is attached hereto as Exhibit "2" and is incorporated herein by reference.

[5] Debtor's Original Counterclaim (the "Counterclaim") in AAA case no. 71 110 J 00069 09 is attached hereto as Exhibit "3" and is incorporated herein by reference.

---

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW ARBITRATION TO PROCEED** Page 5 of 12

notice to suspend."[6] Through the Counterclaim, the Debtor seeks an offset of its liabilities to HCB in the amount of the alleged unreasonable and unnecessary post-suspension charges.[7] It is therefore clear that the central issue in the arbitration proceeding is the amount owed by the Debtor to HCB under the Construction Contract. Accordingly, the resolution of the Arbitration requires addressing many of the same issues presented to the Court in Adversary No. 09-04180, which was removed to this Court on October 20, 2009 (the "Adversary").

10. The Arbitration was significantly advanced by the Petition Date. After the Arbitration Demand, the Debtor and HCB went through the panel selection process with AAA and had a panel in place. On August 7, 2009, the Panel of Arbitrators conducted a preliminary hearing and initial case management hearing. A Scheduling Order was subsequently issued which set forth the procedures for the Arbitration.[8] The Arbitration was scheduled to proceed on December 12, 2009, and the parties were preparing for the Arbitration. Pursuant to the Scheduling Order, discovery was served by both sides. HCB complied with the Debtor's discovery requests by producing thousands of pages of requested documentation and had been preparing to serve even more responses when the Debtor filed its chapter 11 petition. The Debtor, however, did not provide HCB with any of the requested discovery. The Debtor's discovery responses had been due on the Petition Date.

11. At the October 14, 2009, preliminary hearing on HCB's *Motion of H.C. Beck, Ltd. for Relief from the Automatic Stay* (the "First Stay Relief Motion") [Docket # 15] and in a related discovery hearing on October 20, 2009, Debtor's counsel reasserted the Debtor's unspecified disputes with regard to HCB's claim and lien. To the extent that HCB is required to

---

[6] Counterclaim, ¶ 11.

[7] Counterclaim, ¶ 12.

[8] The arbitration Scheduling Order is attached hereto as Exhibit "4" and is incorporated herein by reference.

_____

litigate the Debtor's disputes, HCB requests that the Court not require it to retrace steps already taken in the Arbitration by requiring that the Debtor's disputes be litigated, from scratch, in the Adversary. Accordingly, the most efficient way to reach an expedient and efficient resolution of the Debtor's disputes is to allow the issues related to the extent and validity of HCB's claim and lien to be determined in the Arbitration. HCB, therefore, requests that the Court grant HCB relief from the automatic stay in order to allow it to proceed with the Arbitration

### III. Relief Requested

12. HCB requests that the Court enter an order lifting, annulling, and terminating the automatic stay of 11 U.S.C. §362 so that HCB and Debtor may continue the Arbitration that was already pending on the Petition Date.

### IV. Arguments and Authorities

13. The statutory predicate for granting relief from the automatic stay is Section 362(d) of the Bankruptcy Code. That section provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (B)(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.] [9]

"Cause" is not defined in § 362(d) and therefore must be determined on a case-by case basis.[10] "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.[11] Relief may be granted under

---

[9] 11 U.S.C. § 362(d).

[10] See Mac Donald v. Mac Donald (In re Mac Donald), 755 F.2d 715, 717 (9th Cir. 1985) ("Section 362(d)...explicitly authorize[s] the bankruptcy court to lift the stay "for cause shown." Because there is no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case by case basis."); accord Matter of Reitnauer, 152 F.3d 341 (5th Cir. 1998).

[11] In re Texas State Optical, Inc., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995).

---

362(d)(1) for "cause" when necessary to permit litigation to be concluded in another forum, particularly if the non-bankruptcy suit is ready for trial.[12]

14.     In determining whether to lift the automatic stay to allow litigation against a debtor to proceed outside of the bankruptcy court context, courts consider whether lifting the stay (1) will result in any great prejudice to the debtor or the bankruptcy estate, (2) whether any hardship to a non-debtor of continuation of the stay outweighs any hardship to debtor, and (3) whether the creditor has a probability of prevailing on the merits of the case.[13]  In addition, where relief would permit the resolution of uniquely state law questions which necessarily must be decided as part of the case's administration, cause will exist to lift the automatic stay for that limited purpose.[14]

15.     Moreover, the Federal Arbitration Act ("FAA") embodies a strong federal policy in favor of arbitration.[15]   The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[16]    Indeed, the FAA "directs courts to rigorously enforce agreements to arbitrate, even if a party opposing arbitration is asserting a statutory claim."[17]  In accordance with this directive, a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement.[18]

---

[12] In re Castlerock Properties, 781 F.2d 159 (9th Cir. 1986) (in the interest of judicial economy); Packerland Packing Co., Inc. v. Griffith Brokerage Co. (In re S. Kemble), 776 F.2d 802 (9th Cir. 1985) (judicial economy); Garland Coal & Mining Co. v. United Mine Workers of Am., 778 F.2d 1297 (8th Cir. 1985) (arbitration of labor claim).

[13] In re Namazi, 106 B.R. 93 (Bankr. E.D. Va.1989).

[14] In re Bell, 215 B.R. 266 (Bankr. N.D. Ga.1997).

[15] Gandy v. Gandy (In re Gandy), 299 F.3d 489, 494 (5th Cir. 2002).

[16] 9 U.S.C. § 2.

[17] *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987).

[18] 9 U.S.C. § 3; *Shearson/American Express, Inc.*, 482 U.S. at 226.

16. Cause exists to grant HCB relief from the automatic stay in order to allow it to proceed with Arbitration because (1) the Debtor will not be prejudiced if the Arbitration proceeds, (2) HCB will be prejudiced if the Court does not allow the Arbitration to Proceed and (3) a high probability exists that HCB will be successful on the merits of the issues that will be determined at the Arbitration. The Debtor will not be prejudiced because the Debtor has made it clear that it desires to litigate the extent and validity of HCB's claim and lien. Debtor's counsel represented to the Court, both in its Objection to the First Stay Relief Motion and at the preliminary hearing on the First Stay Relief Motion, that the Debtor intended to file an adversary proceeding to determine the extent and validity of HCB's claim and lien. The Arbitration is the most expedient and efficient way to accomplish the Debtor's own stated goal. Accordingly, the Debtor is actually benefited if the Court allows the Arbitration to go forward.

17. Even if the Debtor is slightly prejudiced if the Court allows the Arbitration to proceed, which HCB denies, the hardship imposed on HCB if the Arbitration is not allowed to go forward far exceeds any prejudice to the Debtor. The Arbitration was significantly farther along on the Petition Date than is the Adversary. The Debtor and HCB had engaged in significant discovery, had an arbitration panel in place, and the Arbitration was to be conducted by the Arbitration Panel on December 12, 2009. Additionally, HCB filed a Motion for Summary Judgment on July 17, 2009. Forcing HCB to retrace these steps in litigating the Adversary would result in an unnecessary delay in the determination of the extent and validity of HCB's claim and lien. HCB would also be forced to waste its limited resources in litigating the Adversary from scratch. Furthermore, and most importantly, HCB would be deprived of its right to arbitrate it dispute with the Debtor – a right expressly promoted by federal law and policy.

18. Finally, a high probability exists that HCB will be successful on the merits of the issues that will be determined at the Arbitration. HCB submitted monthly Applications and Certificates of Payment to the Debtor as required by the Constriction Contract. The monthly Pay Applications reflected the labor performed and material supplied to the Project and the corresponding periods of time related thereto. HCB attached to each Pay Application the back-up documentation to the costs and expenses being billed to the Debtor. Additionally, HCB properly filed the Lien Affidavit in accordance with Texas Law. As a result, it will not be difficult for HCB to prove the extent and validity of its claim and lien in the Arbitration. On the other hand, the Debtor has failed to identify the specific portions of HCB's claim that it disputes. Indeed, the Debtor has gone out of its way not to disclose what part(s) of HCB's claim it disputes. Accordingly, a strong probability exists that HCB will be successful at the Arbitration.

19. For all of the foregoing reasons, cause exists for the Court to grant HCB relief from the automatic stay in order to allow HCB and Debtor to continue the Arbitration.

**WHEREFORE, PREMISES CONSIDERED,** HCB requests that the Court enter an order granting the relief requested herein and for all other relief, whether at law or in equity, to which HCB is justly entitled.

**Dated: October 30, 2009.**

              Respectfully submitted,

              **WINSTEAD PC**
              1201 Elm Street, Suite 5400
              Dallas, Texas 75270-2199
              (214) 745-5400 (Telephone)
              (214) 745-5390 (Facsimile)


              By: */s/ Michael P. Massad, Jr.*
                Michael P. Massad, Jr. – SBT # 13164000
                Lloyd A. Lim – SBT # 24056871
                Elisabeth A. Wilson – SBT # 24056896

              **ATTORNEYS FOR THE BECK GROUP AND H.C. BECK, LTD.**


## CERTIFICATE OF CONFERENCE

  On Thursday, October 29, 2009, I conferred with Joe E. Marshal, counsel for the Debtor and he expressed that the Debtor was opposed to the relief requested in this Motion.

              /s/ Michael P. Massad, Jr.
              Michael P. Massad, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served on October 30, 2009, via first class U.S. Mail, postage prepaid, to the parties listed below. Additionally, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

**Debtor:**
McKinney Shores Hotel Partners, Inc.
1904 Gateway Boulevard
McKinney, TX 75069

**Counsel for Debtor:**
Joe E. Marshall
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard St.
Dallas, TX 75201-6659

**Office of the United States Trustee**
ATTN: Marcus Salitore
110 N. College Ave., Suite 300
Tyler, TX 75702

/s/ *Lloyd A. Lim*
One of Counsel