Michael P. Massad, Jr. – SBT # 13164000
Lloyd A. Lim – SBT # 24056871
Elisabeth A. Wilson – SBT # 24056896
**WINSTEAD PC**
1201 Elm Street, Suite 5400
Dallas, Texas 75270
Phone: (214) 745-5400
Fax: (214) 745-5390

**ATTORNEYS FOR THE BECK GROUP
AND H.C. BECK, LTD.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 09-42778-BRT-11 |
| MCKINNEY SHORES HOTEL | § | |
| PARTNERS, INC. | § | Chapter 11 |
| | § | |
| Debtor | § | |
| | § | |

### H.C. BECK LTD.'S MOTION TO CONVERT DEBTOR'S CASE TO CHAPTER 7 PURSUANT TO SECTION 1112 OF THE BANKRUPTCY CODE

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY (20) DAYS FROM DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:**

H.C. Beck, Ltd. ("HCB") files this *Motion to Convert Debtor's Case to Chapter 7 Pursuant to Section 1112 of the Bankruptcy Code* (the "Motion"), and would respectfully show the Court the following:

## I. Jurisdiction and Venue

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O). Venue is proper in this judicial district pursuant to 28 U.S.C. § 1408.

## II. Background

### A. The Bankruptcy Case

2. McKinney Shores Hotel Partners, Inc. (the "<u>Debtor</u>"), commenced this case on September 1, 2009 (the "<u>Petition Date</u>"), by filing a Voluntary Chapter 11 Petition. The Debtor is authorized to conduct business operations as a debtor-in-possession; however, the Debtor has not conducted any business operations since the Petition Date. No trustee or committee has been appointed. Debtor's voluntary petition designates the Debtor as a Single Asset Real Estate Debtor under Section 101(51)(B) of the Bankruptcy Code.

### B. The Westin Hotel Project and the Debtor's Lack of Business Operations

3. The Debtor is a single asset real estate entity whose sole purpose is to develop a hotel and convention center known as the Westin McKinney Hotel and Events Center located in McKinney, Collin County, Texas (the "<u>Project</u>"). In order to build the Project, the Debtor, as owner, and HCB, as contractor and construction manager, entered into a prepetition "Standard Form and of Agreement Between Owner and Construction Manager where the Construction Manager is also the Contractor" (the "<u>Construction Contract</u>") on February 25, 2008. Pursuant to the Construction Contract, HBC fully performed its duties, and provided labor and materials for the construction of the Project. HCB also performed certain mass grading work on property adjacent to the Project pursuant to a change order to the Contract requested by the Debtor.

4. The Debtor did not obtain a construction loan to undertake the Project, but instead received only unsecured financing (of approximately $9.3 million as listed on the schedules)

___

from an affiliated entity, O & S Holdings, LLC. The Debtor and its affiliate began to run out of funds to complete the Project in the fall of 2008, and started to fail to pay HCB and/or the subcontractors working on the Project. On October 9, 2008, the Debtor instructed HCB to cease all work on the Project. In Amendment No. 1 to the Construction Contract (the "Amendment"), dated October 15, 2008, HCB and the Debtor confirmed the suspension of all construction activities on the Project. The Amendment also obligated the Debtor to continue to compensate HCB for expenses incurred during the suspended time of performance.

5. The Debtor, however, failed to compensate HCB as provided for in the Amendment. HCB, therefore, notified the Debtor of its intent to stop work on the Project for, *inter alia*, failure to pay HCB as required under the Construction Contract on January 21, 2009. On January 30, 2009, HCB notified the Debtor of it intent to terminate the Construction Contract for, *inter alia*, the Debtor's continued failure to pay HCB as required by the Construction Contract.[1] On March 2, 2009, HCB gave the Debtor its final written notice of its intent to terminate the Construction Contract and formally terminated the Construction Contract on March 13, 2009.[2]

6. After HCB's termination of the Construction Contract, the Debtor ceased all business operations and has done virtually nothing for approximately 13 months to complete the Project. Indeed, the Debtor has no known employees through which it can operate its business and/or restart construction on the Project. The Debtor's lack of business operations, employees and construction activities on the Project has not changed since the Petition Date. As of the time

---

[1] As of the Petition Date, the outstanding indebtedness owed by the Debtor to HCB was at least $8,273,674.91 for the services provided by HCB to the Debtor pursuant to the Construction Contract (the "Pre-Petition Indebtedness"). The Pre-Petition Indebtedness is secured by that certain Lien Affidavit filed in the Official Records of Collin County, Texas (together with all Amendments thereto, the "Lien Affidavit").

[2] HCB took the appropriate steps to protect its right to payment under the Construction Contract by filing a Lien Affidavit against the real property on which the Project sits, as well as all improvements related to the construction of the Project. The real property on which the Project sits is located at 1900 Gateway Boulevard, McKinney, Collin County, Texas, 75069.

---

of the filing of this Motion, the Project is not being worked on in any respect and the Debtor is not conducting any business activities whatsoever.

### C. The Debtors' Other Assets and Lack of Revenue

7. Other than its interest in the Project, the Debtor's Schedule B shows that the Debtor's only other assets are (1) $9,124.00 in its Wells Fargo operating account and (2) a pending lawsuit against various parties, including the City of McKinney, currently proceeding in the Untied States District Court for the Eastern District of Texas, Sherman Division, as Case No. 4:09-cv-284, which is allegedly valued at $50,000.00. Moreover, as outlined above, the Debtor is not currently conducting any business operations and, therefore, is not producing any revenue to fund its reorganization efforts. This fact is borne out in the Debtor's September Operating Report [Docket #35], which shows that the Debtor neither produced revenues nor incurred operating expenses in the month of September. The Debtor has done literally nothing on the Project for more than a year, including during the last two months while this bankruptcy has been pending.

### D. The Debtors Cannot Obtain Financing to Fund a Plan of Reorganization

8. In its current condition, according to an estimate provided to HCB by CB Richard Ellis, the Project will require a minimum of $53,735,000.00 to complete. Additionally, there is $15,879,879.00 in M&M Liens filed against the property on which the Project is located. Of that amount, $10,164,412.00 belongs to HCB and its affiliate the Beck Group, $1,277,574.00 belongs to the City of McKinney and $125,120.00 belongs to Alpha Testing. Accordingly, the M&M Liens filed against the property on which the Project is located that are clearly not "duplicative" total a minimum of $11,567,106.00. In Beck's 'opinion, as a result, the Debtor would either have to (1) obtain financing in the minimum amount of $65,301,106.00 in order to complete the Project and pay off the M&M Liens in full, or (2) obtain financing in the amount of

$53,735,000.00 in order to complete the project without paying off the M&M Liens. However, if the Debtor chooses to do the latter, the Debtor's lender, if any, would be faced with having to make a loan to the Debtor that is junior to the M&M Liens.

9. There is simply no evidence and/or any credible expectancy that any lender in this current market would be willing to make a loan to the Debtor in either the amount of $53 million, subject to the M&M Liens, or $65 million when the Debtor has no business operations, has no revenues, lacks unencumbered assets to pledge as security for such a loan and, as will be explained below, will likely not be able to complete the Project because it will not be granted the required extensions and permits necessary to complete the Project by the City of McKinney. The Debtor's misguided assertions that it "can obtain financing and is holding discussions with lenders and the City of McKinney," is insufficient to establish the Debtor's ability to obtain the necessary financing it needs to propose a feasible plan of reorganization. Until the Debtor produces proof that a lender is willing to fund the Debtor's reorganization efforts, such as a loan commitment, any plan of reorganization proposed by the Debtor will simply not be feasible.

**E. The City of McKinney Will not Grant the Debtor the Required Extensions and Permits to Complete the Project**

10. In addition to not being able to obtain financing to reorganize and complete the Project, the Debtor will also be unable to propose a feasible plan of reorganization because its is probably unable to obtain the required extensions and permits necessary to complete the Project. Counsel for both Beck and the Debtor have recently been advised in writing by counsel for the City of McKinney that ". . .no meetings. . .or substantial discussions have occurred, and none are contemplated," between the Debtor and the City of McKinney. Additionally, the *Amended and Restated Hotel Development Agreement* between the City of McKinney and the Debtor (the "Hotel Development Agreement"), requires the Project to be substantially complete by February

28, 2010 (the "Required Completion Date").  If the Project is not substantially complete by the Required Completion Date, the Debtor will be required to pay the City of McKinney liquidated damages in the amount of $2,000.00 per day until to Project is substantially complete.  Furthermore, if the Project is not substantially complete by the Required Completion Date, the Hotel Development Agreement is subject to termination.  As of the time of the filing of this Motion, the Debtor has approximately four (4) months to substantially complete the Project.  However, the Project is nowhere near substantial completion, with only the concrete and rebar columns for the hotel having been erected before Beck was told to quit construction.  The City of McKinney has indicated that it will not grant the Debtor any extensions of the Required Completion Date and the Debtor cannot cure its imminent default through the bankruptcy process.  The Debtor is, therefore, currently unable to propose a feasible plan of reorganization because it neither has the funds to pay the City of McKinney $2,000.00 per day through February 28, 2011, nor is it able to complete the Project by the Required Completion Date.

11.     Furthermore, the City of McKinney has expressed that it will not allow the Debtor to build anything but the Project (i.e., a 4-star or first-class hotel and convention center) on the property where the Project is located and will not grant the Debtor permits or variances that would result in anything other than the specified Project being built.  The Debtor, however, represented to the United States Trustee and the creditors in attendance at its 341 meeting that it does not intend to complete the Project as "originally anticipated."  The Debtor, through its counsel Deborah Perry stated, "[t]he Debtor is looking at different options there including retail, a limited use hotel or office space, but would not be pursuing developing this Western Conference Center as had originally been anticipated."  Ms. Perry's statements were confirmed by the testimony of the Debtor's controller, Ms. Shawna Houghton, who testified that the Debtor

_____
**MOTION TO CONVERT DEBTOR'S CASE TO CHAPTER 7**                                          **Page 6 of 11**

has not made a decision with regard to what to build on the property on which the Project is located, but that "[i]f we were to do a hotel it would be a limited services hotel. We are also looking at retail." As stated above, the City of McKinney will not allow the Debtor to build a limited use hotel or a retail shopping center. Accordingly, even if the City of McKinney grants the Debtor an extension of the Required Completion Date, the Debtor will not be able to reorganize unless it is able to obtain sufficient financing to complete the Project as originally anticipated by the City of McKinney.

### III. Arguments and Authorities

#### A. Standard for Conversion to Chapter 7

12. Section 1112(b)(1) of the Bankruptcy Code provides, in pertinent part, as follows:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate, <u>the court shall convert a case</u> under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, if the movant establishes <u>cause</u>.

11 U.S.C. § 1112(b)(1) (emphasis added).

13. On motion of a creditor, the court may convert a chapter 11 case to a chapter 7 case for cause, including continuing diminution of the estate, the absence of a reasonable likelihood of rehabilitation, inability to effectuate a plan, and unreasonable delay by the debtor that is prejudicial to creditors.[3] Section 1112(b) affords courts broad discretion in deciding whether cause exists.[4] A court's decision to convert a case to chapter 7 "will be reversed only if based on an erroneous conclusion of law or when the record contains no evidence on which [the

---

[3] *In re Timbers of Inwood Forrest Associates, Ltd.*, 808 F.2d 363, 371-72 (5th Cir. 1987); *In re Quality Beverage Co., Inc.*, 181 B.R. 877, 897 (Bankr. S.D. Tex. 1987).

[4] *In re Sullivan Central Plaza I, Ltd.*, 935 F.2d 723 (5th Cir.1991).

---

bankruptcy court] rationally could have based that decision."[5] Determination of cause is case specific and "the charge to the Bankruptcy Judge under § 1112, then, is to evaluate each debtor's viability and rate progress in light of the 'best interest of creditors and the estate.'"[6] Under Section 1112(b) of the Bankruptcy Code, the facts of this case compel conversion.

B. **Cause Exists to Convert This Case Because There is no Reasonable Likelihood That the Debtor can Reorganize**

14. "A debtor lacks 'a reasonable likelihood of rehabilitation' where, for example, it lacks income, lacks operating funds, or lacks employees, capital, or 'continuing revenue-generating activity.'"[7] Where a court finds "no reasonable possibility of reorganization[,]" it need not delay conversion.[8] There is also no evidence to suggest that there is a reasonable likelihood that the Debtors can effectively reorganize. The Debtor has no employees and as borne out in the Debtor's September Operating Report, the Debtor has neither produced revenues nor incurred operating expenses from approximately November 1, 2008 through the month of November, 2009. The Debtor also lacks third-party financing to fund the completion of the Project or its reorganization. Furthermore, the Debtor cannot obtain the required extensions, variances and permits from the City of McKinney to allow it to complete the Project. As a

---

[5] *Benedor Corp. v. Conejo Enter., Inc. (In re Conejo Enter., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996).

[6] *In re Timbers*, 808 F.2d at 372; *see also Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) (The list of what constitutes "cause" is not exhaustive and "the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.") (quoting H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977), reprinted in 1978 U.S.C.C.A.N. 6362); *see also In re Kent*, No. 07-03238, 2008 WL 5047799, at *6 (Bankr. W.D. Ariz. Sept. 23, 2008) (same); *In re Gateway Access Solutions, Inc.* 347 BR 556 (Bankr. M.D. Pa. 2007) (same); *In re 3 Ram, Inc.*, 343 B.R. 113 (Bankr. E.D. Pa. 2006) (same).

[7] *In re Bay Area Material Handling*, No. 94-15815, 1996 U.S. App. LEXIS 2272, at **4-5 (9th Cir. Jan. 25, 1996) (internal citations omitted) (affirming conversion of chapter 11 case to chapter 7).

[8] *In re Johnston*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992); *see also Stage I Land Co. v. U.S. Dept. of H.U.D.*, 71 B.R. 225, 231 (D. Minn. 1986) (Chapter 11 case should be dismissed at the outset for cause where no reasonable possibility of a reorganization exists); *In re Macon Prestressed Concrete Co.*, 61 B.R. 432, 436 (Bankr. M.D. Ga. 1986) (with respect to conversion, "the debtor should be given a fair opportunity to reorganize, but the debtor should not be permitted to continue in a futile effort to reorganize."); *In re Economy Cab & Tool Co. Inc.*, 44 B.R. 721, 724 (Bankr. D. Minn. 1984) (Chapter 11 case may be converted in early stages of proceeding where movant can show that there is "no more than a 'hopeless and unrealistic prospect' of rehabilitation").

result, the Debtors cannot propose a feasible plan of reorganization.[9] Because the Debtor is simply not a viable business entity that can be reorganized, the Court should convert the Debtor's case to chapter 7.

### C. The Court Should Convert This Case Because the Debtor's Bankruptcy Estate is Administratively Insolvent

15. Cause also exists to convert the Debtors' bankruptcy case to chapter 7 because the Debtor's' estate is administratively insolvent.[10] As explained above, the Debtor does not have significant unencumbered assets. Indeed, the only non-contingent asset that the Debtor has is $9,124.00 in cash in its operating account. Upon information and belief, the Debtor is accumulating substantial post-petition expenses, mostly in the form of professional fees, which will more than eclipse the Debtor's unencumbered assets. As a result, the Debtor is administratively insolvent. Allowing the Debtor's bankruptcy case to continue in chapter 11 will only serve to increase the amount of administrative claims against the Debtor's estates – claims that the Debtor simply cannot pay. Further increasing the administrative claims against an estate that is already administratively insolvent is not in the best interest of the Debtor, its estate or its creditors. The Court should, therefore, convert the Debtor's case to chapter 7 pursuant to 11 U.S.C. § 1112(b)(1).[11]

---

[9] *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993) (holding that Debtor did not have reasonable likelihood of reorganization when it did not have revenue producing business operations); *In re Citi-Toledo Partners*, 170 B.R. 602, 609 (Bankr.N.D.Ohio 1994) (same); *In re Greenfield Drive Storage Park*, 207 B.R. at 917 (holding that cause existed to convert a case post-confirmation when the debtor has lost its sole means of generating revenue to fund the plan); *see also In re Johnston*, 149 B.R. at 162 (citing *In re Economy Cab & Tool Co. Inc.*, 44 B.R. 721, 724 (Bankr. D. Minn. 1984) (chapter 11 case may be converted in early stages of proceeding where movant can show that there is "no more than a 'hopeless and unrealistic prospect' of rehabilitation")).

[10] *See In re Desmond*, 331 B.R. 42, 44 (B.A.P. N.H. 2005) (holding cause existed for conversion when estate is administratively insolvent); *In re Bartmann*, No. 03-04975, 2004 WL 1057662, at * 6 (B.A.P. 10th Cir. 2004) (affirming bankruptcy court's order converting case to chapter 7 after determining that the debtor's chapter 11 estate had become administratively insolvent); *In re Ionospheres Club, Inc.*, 134 B.R. 515, 525 (Bankr. S.D.N.Y. 1991) ("Administrative insolvency is but one of the bases for conversion to Chapter 7 under § 1112(b).").

[11] *See In re Desmond*, 331 B.R. at 44; *In re Johnston*, 149 B.R. at 160.

---

16. HCB reserves the right to amend or supplement this Motion at any time prior to the hearing on the Motion.

**WHEREFORE, PREMISES CONSIDERED**, HCB respectfully requests that the Court (i) grant the Motion; (ii) enter an order converting the Debtor's case to chapter 7; and (iii) grant HCB such other and further relief as is appropriate and just under the circumstances. HCB also requests general relief.

**Dated: November 13, 2009.**

Respectfully submitted,

**WINSTEAD PC**
1201 Elm Street, Suite 5400
Dallas, Texas 75270-2199
(214) 745-5400 (Telephone)
(214) 745-5390 (Facsimile)


By: */s/ Michael P. Massad, Jr.*
Michael P. Massad, Jr. – SBT # 13164000
Lloyd A. Lim – SBT # 24056871
Elisabeth A. Wilson – SBT # 24056896

**ATTORNEYS FOR THE BECK GROUP AND H.C. BECK, LTD.**

### CERTIFICATE OF CONFERENCE

On Thursday, October 29, 2009, I conferred with Joe E. Marshal, counsel for the Debtor and he expressed that the Debtor was opposed to the relief requested in this Motion.

/s/ Michael P. Massad, Jr.
Michael P. Massad, Jr.

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Motion was served on November 13, 2009, via electronic mail and/or facsimile transmission, to the parties listed below. Additionally, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

**Debtor:**
McKinney Shores Hotel Partners, Inc.
1904 Gateway Boulevard
McKinney, TX 75069

**Counsel for Debtor:**
Joe E. Marshall
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard St.
Dallas, TX 75201-6659

**Office of the United States Trustee**
ATTN: Marcus Salitore
110 N. College Ave., Suite 300
Tyler, TX 75702

      */s/ Lloyd A. Lim*
      One of Counsel