**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| McKINNEY SHORES HOTEL PARTNERS, INC., | § | CASE NO. 09-42778-btr |
| | § | (Chapter 11) |
| | § | |
| *Debtor.* | § | |
| | § | |

# MOTION OF THE CITY OF MCKINNEY, TEXAS AND RELATED CITY PARTIES FOR ABSTENTION OR PARTIAL ABSTENTION

TO THE HONORABLE JUDGE PRESIDING:

COME NOW The City of McKinney, Texas (the "City"), McKinney Community Development Corporation (sometimes "MCDC"), and McKinney Economic Development Corporation (sometimes "MEDC"), all collectively the "City Parties" herein, and, subject to their defenses o~~f sovereign immunity described herein below and~~ without waiving same, file this Motion for Abstention or Partial Abstention, pursuant to the *Burford* doctrine, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and/or 28 U.S.C. § 1334(c)(1) and/or (c)(2), and would respectfully show:

## I. PRESERVATION OF SOVEREIGN IMMUNITY DEFENSES

1. The City Parties have asserted defenses of sovereign immunity in that lawsuit (the "District Court Lawsuit") styled *McKinney Economic Development Corp., et al. v. McKinney Shores Properties, Inc., et al.*, bearing Case No. 4:09cv0284, now pending in the United States District Court for the Eastern District of Texas (Sherman Division) (the "District Court"). The sovereign immunity defenses are now pending before the Magistrate of said District Court in the form of a motion to dismiss.

2. This Motion for Abstention or Partial Abstention is filed subject to the defenses of sovereign immunity noted above, without waiving same.

## II. BACKGROUND

3. The Gateway Blvd. project is an integrated project which, when completed, is designed to bring to The City of McKinney a first-class, four-star Westin® brand hotel (the "Hotel") and Event Center (the "Event Center") (which, together with common areas form the "Hotel Complex") on the northeast corner of Central Expressway (Highway 75) and Highway 5 as the latter enters into the City. Surrounding retail facilities are also included in the master plan. Although non-debtor affiliates of the Debtor were once involved in the adjacent retail development, that is no longer the case.

4. The term "Hotel Complex" is defined in the operative Hotel Development Agreement, defined below, to refer to that integrated, highly negotiated, and carefully planned complex consisting of the Hotel, Event Center, and common areas described therein.

5. The ownership structure of the Hotel Complex utilizes a condominium declaration, whereby the resulting condominium entity owns the underlying real estate. The Debtor owns that unbuilt condominium unit known as the "Hotel Unit." The City owns that unbuilt condominium unit known as the "Event Center Unit." The condominium entity owns unbuilt common areas, with both unit holders having certain rights in the common areas.

6. Debtor is the "Developer" of the Hotel Complex under that Amended and Restated Hotel Development Agreement by and among it, the City, MEDC and MCDC (as amended and modified, the "Hotel Development Agreement") at issue herein. By such agreement, the Debtor is obligated to construct the entire Hotel Complex – Hotel, Event Center,

and common areas – all in accordance with the Hotel Development Agreement and other Governing Documents,[1] together with applicable ordinances and regulations.

7. The Debtor opted to cease work on the Hotel Complex in the fall of 2008 and later terminated the general contractor, H.C. Beck, Ltd. ("Beck"), leaving somewhere between $7.25 million to $8.3 million, more or less, unpaid to Beck and its subcontractors, together with associated mechanics and materialmens liens asserted against the Hotel Unit. Additional sums are also owed to non-Beck contractors and subcontractors.

8. In the main, only some underground infrastructure, the slab for the Hotel and Event Center, and some upright steel for approximately three floors of the Hotel (none for the Event Center) are in place. Some considerable amount of the work previously done is now spoiled by passage of time, weather, and the like, and will have to be redone.

9. Although suspending construction under the Hotel Development Agreement sometime in the fall of 2008 and formally terminating its construction contract with Beck thereafter, the Debtor did not commence its chapter 11 bankruptcy case until September 1, 2009 (the "Petition Date").

10. On or about December 28, 2009, the Debtor filed "McKinney Shores Hotel Partnership, Inc. First Amended Plan of Reorganization," Docket No. 74. (Such plan of reorganization, as it may hereafter be modified or amended or replaced by any further plan of reorganization herein is referred to as the "Plan.")

[1] As discussed more thoroughly in the accompanying Special Brief, the term "Governing Documents" as used herein includes the Use Restrictions, the Condominium Declaration, and the Debtor's Deed, each as referenced and defined in the Special Brief. None of these are executory contracts that may be assumed, rejected or modified by the Debtor under any scenario.

11. Debtor's Plan apparently envisions a redesign and re-budgeting of some or all of the Hotel Complex, with the ostensible goal of completing some version of the Hotel Complex within financial parameters the Debtor envisions to be financially feasible to it.

12. Because the City Parties cannot agree to accept anything less than first-class, four star rated Hotel and Event Center, bearing the approved Westin® brand (or brand of another substitute franchisor as provided in the Hotel Development Agreement and other Governing Documents), the Plan is dependent upon separate, binding approvals by each of Starwood, a capable third-party lender providing commitments for sufficient financing, and the City Parties.

13. To date, the City Parties have not approved any redesign or re-budgeting of the Hotel Complex or any modifications of the Hotel Development Agreement. At this time, Debtor has no building permit to recommence construction of the Hotel Complex and any redesign would not presently be in compliance with applicable zoning.

14. The City Parties are not presently aware of any final approvals by Starwood or of any firm commitments by any lenders or investors to provide sufficient financing.

## III. STATEMENT OF RELIEF SOUGHT

15. Pursuant to the *Burford* doctrine, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and/or 28 U.S.C. § 1334(c)(1) and/or (c)(2), the City Parties ask that the presiding federal courts abstain in whole or in part, from considering or determining the following:

> (a) Deciding, by motion, in connection with confirmation of any plan of reorganization, or otherwise whether the Hotel Development Agreement is or is not an executory contract susceptible to assumption or rejection in Debtor's chapter 11 bankruptcy case;
>
> (b) Permitting the assumption or rejection of the Hotel Development Agreement, whether by motion, in connection with confirmation of any plan of reorganization or otherwise;

(c) Determining whether, how and on what basis any defaults of the Hotel Development Agreement can be cured;

(d) Entering any findings, judgments, confirmation order, or other orders determining, directly or inferentially, by operation of res judicata, collateral estoppel, or any other doctrine of preclusion, or otherwise any alteration or modification whatsoever of the terms, provisions, and other requirements of the Hotel Development Agreement and other Governing Documents, ordinances, and regulations (as defined and discussed in the supporting Special Brief), including those alterations and modifications presently enumerated in Article IV and Sections 4.3, 4.3.2, and 4.3.3 of the proposed Plan or as it may be amended or modified;

(e) Approving the proposed re-budgeting and refinancing set forth in the Plan (or other re-budgeting or refinancing) as being adequate to complete the Project as defined in and in accordance with the Hotel Development Agreement and other Governing Documents, ordinances, and regulations;

(f) Approving any modifications proposed by the Debtor now, at the confirmation hearing, or following any confirmation of any Plan, on the grounds that such proposed modifications are found to be either immaterial or "non-material" under the Hotel Development Agreement and other Governing Documents, ordinances, and regulations;

(g) Approving any modifications proposed by the Debtor now, at the confirmation hearing, or otherwise to modify municipal law or the procedures established in the Hotel Development Agreement, other Governing Documents, ordinances, and regulations governing the processes for approval or disapproval of any proposed modifications or for determining whether any proposed modifications are or are not immaterial or "non-material";

(h) Approving any alteration or modification of the remedies, liquidated damages, or deadlines established in the Hotel Development Agreement or other; and,

(i) Construing, directly or indirectly, any rights, privileges, elections, remedies, or obligations of the City Parties under the Hotel Development Agreement or other Governing Documents, ordinances, and regulations.

## IV. THE *BURFORD* DOCTRINE AND 28 U.S.C. 1334(c)(1) AND (2)

### A. THE *BURFORD* DOCTRINE

16. Under the *Burford* doctrine:

Federal courts should abstain from deciding cases presenting " 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' " or whose adjudication in a federal forum " 'would be disruptive of state efforts to establish a coherent

> policy with respect to a matter of substantial public concern.' " *NOPSI,* 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). ... Thus, the "Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems." *Id.* at 719. As we have explained, although "abstention from the exercise of federal jurisdiction is the exception, not the rule, its importance in our system of dual sovereignty cannot be underestimated." *Id.* (internal quotation marks, citation, and alteration omitted). We must "exercise [our] discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford,* 319 U.S. at 318, 63 S.Ct. 1098 (internal quotation marks omitted).

*MLC Automotive, LLC v. Town of Southern Pines*, 532 F.3d 269, 280-281 (4th Cir. 2008).

17. Under the *Burford* doctrine, federal courts may abstain, among other things, from deciding cases that involve zoning and land use. Examples include the following:

(a) In *MLC Automotive*, a landowner sued his town in federal court after the town made zoning changes that affected the permitted use of his land. 532 F.3d at 275-276. The landowner brought state law tort claims based on the zoning change and alleged both state and federal substantive due process violations. *Id.* The court, *sua sponte*, stayed the case under the *Burford* doctrine pending resolution of the land use and zoning issues in state court. *Id.* at 276. The Fourth Circuit affirmed the stay and the abstention. *Id.* at 284.

(b) In *Koerner v. Garden District Association*, a homeowner sued his local zoning association in federal court, alleging that the association had encouraged the city to violate his civil rights. 78 Fed. Appx. 960, 962 (5th Cir. 2003). The court stayed the case under *Burford*, pending resolution of a state court action in which the zoning association was seeking an injunction to prohibit the homeowner from continuing to use his property in violation of zoning ordinances. *Id.* The Fifth Circuit affirmed the stay and the abstention. *Id.* at 964.

(c) In *Rucci v. Cranberry Township, Pa.*, when a real estate developer's subdivision permit was denied, the developer sued the township in federal court, alleging that the local zoning ordinance violated the developer's Fourteenth Amendment equal protection rights and raising state law challenges to the state's municipal planning code and eminent domain procedures. 130 Fed. Appx. 572, 574 (3rd Cir. 2005). The district court dismissed the federal law claim and abstained from hearing the state law claims under *Burford*. *Id.* The Third Circuit affirmed the dismissal and the abstention. *Id.* at 580.

As shown more fully in the Special Brief, the facts and principals at issue in the instant situation are quite consistent with those of these cited cases following *Burford*. In each of the cited cases, federal courts abstained from hearing local zoning and land use matters because doing so had the potential to disrupt a community's carefully crafted planning and zoning laws, enacted to ensure that local development proceeded in the manner desired by the community. *MLC Automotive*, 532 F.3d at 276; *Koerner*, 78 Fed. Appx. at 963-964; *Rucci*, 130 Fed. Appx. at 577. In this case, development of the Hotel Complex is an integral component of the planned development of City. As such, it is subject to a specific zoning ordinance passed by the City Council of City and to numerous planning and development agreements to which City or City's agencies are parties, all described more fully in the Special Brief. A ruling by this Court on the Hotel Development Agreement or related matters has the potential to disrupt City's carefully thought out planning; the matters enumerated in paragraph 15 hereof are therefore precisely the type of matters from which this court should abstain. As stated by the Fifth Circuit, "federal courts should not leave their indelible imprint on local and state land use and zoning law by entertaining these cases, and, in effect, sitting as a zoning board of appeals." *Koerner*, 78 Fed. Appx. at 964, citing *Pomponio v. Fauquier County Board of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994) (en banc), *overruled in part on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728-31, 116 S. Ct. 1712, 135 L. Ed. 1 (1996).

**B. 28 U.S.C. § 1334(c)(1) AND (2)**

18. 28 U.S.C. § 1334 (c) and (d) provide, in pertinent part:

> (c)
>
> (1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
>
> (d)
>
> Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

19. Bankruptcy courts often use a test that weighs a list of specific factors to decide whether to exercise their discretion to abstain under 28 U.S.C. § 1334(c)(1). *Garner v. Todd (In re Todd Entertainment)*, 397 B.R. 795, 800-801 (Bankr. N.D. Tex. 2008) *amended on other grounds*, 2008 WL 5205858 (Bank. N.D. Tex. Dec. 9, 2008); *Principal Life Ins. Co. v. JP Morgan Chase Bank, N.A. (In re Brooks Mays Music Co.)*, 363 B.R. 801, 817 (Bankr. N.D. Tex. 2007); *Coho Oil & Gas, Inc. v. Finley Resources, Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 221-222 (Bankr. N.D. Tex. 2004). As stated by one court, these factors are:

(a) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(b) The extent to which state law issues predominate over bankruptcy issues;

(c) The difficulty or unsettled nature of the applicable state law;

(d) The presence of a related proceeding commenced in state court or other nonbankruptcy court;

(e) The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(f) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(g) The substance rather than form of an asserted "core" proceeding;

(h) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(i) The burden on the bankruptcy court's docket;

(j) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(k) The existence of a right to a jury trial; and

(l) The presence in the proceeding of non-debtor parties.

*Todd Entertainment*, 397 B.R. at 800-801.

20. The presence and relative weight of a significant number of the *Todd* factors greatly favor abstention in this case. First, there is no arguable basis for federal jurisdiction over the Hotel Development Agreement other than 28 U.S.C. § 1334. Second, although no proceeding has yet commenced in a nonbankruptcy court, any additional work on the Hotel that does not strictly conform to the Hotel Development Agreement as it existed prior to the bankruptcy filing will necessarily require a series of municipal proceedings. (These proceedings would include, at a minimum, proceedings before the City's planning and zoning commission and before the City Council itself, related to zoning variances, any further special zoning

ordinances, and the review, approval and issuance of any building permit. During the construction phase, the Debtor will be required to satisfy the City's project construction manager and any on-site building inspectors. If Debtor's proposed zoning or building design modifications are not approved, if a building permit is not issued, or if certain work does not pass inspection, there could be appeals at the municipal level. After municipal and administrative procedures are exhausted, state court remedies may also be available.) Third, while the assumption or rejection of an executory contract is typically a "core" proceeding, due to the nature of the Hotel Development Agreement, that analysis in the instant case is illusory. Being inextricably bound to City's development plans and decision making processes, decisions on proposed modifications to this particular contract are best left to municipal authorities. Fourth, it is feasible and the most appropriate course of action to sever the state and local law matters from other proceedings in the bankruptcy. Fifth, non-debtor parties are most certainly involved and will be significantly impacted. Finally, as in *Coho Energy*, where the bankruptcy court concluded that abstention was appropriate, "state law issues do not merely predominate; they overwhelm." 309 B.R. at 222.

21. Thus, whether by virtue of the *Burford* doctrine, application of 28 U.S.C. § 1334(c)(1) or (2), or otherwise, the federal courts are authorized to abstain from hearing all or any aspect of a case in or arising under Title 11, including any motion or contested matter or insular portions thereof.

### C. <u>THE GOVERNING DOCUMENTS, ORDINANCES AND REGULATIONS</u>

22. The Hotel Development Agreement and other Governing Documents, ordinances, and regulations are defined and their interworkings are described in greater detail in the Special